MONONGAHELA COAL CO. v. FIDELITY & DEPOSIT CO. OF MARYLAND.

(Circuit Court of Appeals, Fifth Circuit. May 23, 1899.)

No. 817.

INDEMNITY—BREACH OF SURETYSHIP BOND—EVIDENCE.

Under a bond for indemnity given on behalf of an employé appointed as agent for the sale of merchandise on commission, which by its terms declares that its true intent and meaning are that the surety "shall be responsible for moneys, securities, or property diverted from the employer through fraud or dishonesty on the part of the employé," proof that on a settlement of accounts between them there was an indebtedness from the employé to the employer is not of itself sufficient to authorize a recovery by the employer against the surety, as such indebtedness may have been authorized by agreement between the employer and employé, or by their course of dealing, and may have been incurred without any fraud or dishonesty on the part of the employé.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

This is an action brought by the plaintiff in error against the J. B. Donnally Company, Limited, and the defendant in error, on a bond of insurance or indemnity. The said plaintiff in error had judgment against the J. B. Donnally Company, Limited, for $6,634.15; but the circuit court directed a verdict for the defendant in error, and judgment was rendered in its favor. Whether or not the court erred in directing a verdict for the Fidelity & Deposit Company of Maryland is the question for consideration here.

The petition, leaving out formal parts, is as follows:

"First. That on the 10th day of March, 1896, it entered into a contract of agency with said defendant [the J. B. Donnally Company, Limited] to sell Pittsburg coal of plaintiff in the state of Louisiana upon the terms, under the conditions, and for the commissions set forth in the agreement thereof, made part hereof; same expiring on the 31st of December, 1896. Second. That said contract was in writing, renewed for one year to the 31st day of December, 1897, as per renewal thereof annexed hereto as part hereof. Third. That, during the course of the business relations so existing between petitioner and said defendant, certain lots of coal were sold by said defendant, the proceeds thereof collected for account of petitioner by said defendant, and not paid over, and same amount to the sum of six thousand six hundred thirty-four and $15/100$ dollars, with six per cent. per annum interest from the 1st October, 1897, as will more fully appear by the statements annexed as part hereof. Petitioner further represents that demand has been made upon said defendant for the payment of said sum aforesaid, without avail. Your petitioner further represents that the Fidelity & Deposit Company of Maryland, a corporation created under and by virtue of the laws of the state of Maryland, and a citizen of said state, domiciled at Baltimore, Maryland, and having a legal representative and doing business in this district, did, by its bond No. 30,901, in consideration of the premium therein expressed and paid, bind and obligate itself unto your petitioner, in the sum of ten thousand dollars, that it would save, defend, and keep harmless your petitioner from and against all loss and damage whatsoever, of any nature or kind, and from all other legal costs and expenses, direct or indirect, incidental thereto, which petitioner shall or may at any time sustain or be put to in the premises, and against all and any pecuniary loss sustained by petitioner of moneys belonging to petitioner, in the possession or custody of the said J. B. Donnally Company, Limited, of New Orleans, or for the possession of which it is responsible, under their contract of agency and renewal hereinbefore set forth, which said bond is signed on the 20th of March, 1896, for a period of time of one year expiring the 20th March, 1897, and which bond was continued in full force and effect thereafter, for due

consideration paid, for one year, to the 20th March, 1898, all of which will more fully and at large appear by reference to said bond and said continuation certificate, hereto annexed and made part hereof. Petitioner further represents that the amount so due and owing as aforesaid by the said J. B. Donnally Company, Limited, is a loss sustained under and by virtue of the terms and provisions of the bond, and the continuation thereof aforesaid, and has been duly demanded of the said Fidelity & Deposit Company of Maryland, which company has heretofore declined payment thereof."

The defendant's answer was a general denial, and an averment that it was not liable on the bond, except for pecuniary loss caused by the larceny or embezzlement of the employé, the J. B. Donnally Company, Limited; that the respondent was discharged from liability on the bond by reason of a false certificate given by the plaintiff that it had examined the books of the employé, and found them correct, etc.

The bond sued on is as follows:

"Whereas, the J. B. Donnally Company, Limited, New Orleans, Louisiana, hereinafter called the 'employé,' has been appointed to the position of agents in the service of the Monongahela Coal Company, Pittsburg, Pennsylvania, hereinafter called the 'employer,' and has been required to furnish a bond for his honesty in the performance of his duties in said position; and whereas, the employer has delivered to the Fidelity and Deposit Company of Maryland, a corporation of the state of Maryland, hereinafter called the 'company,' certain statements and declarations relative to the duties and accounts of the employé, the manner of conducting the business of the employer, and other matters, which, together with any statements or declarations hereafter required by or lodged with the company, do and shall constitute an essential part and form the basis of this contract: Now, therefore, in consideration of the sum of seventy-five and 00/100 dollars paid as a premium for the period from March twentieth, 1896, to March twentieth, 1897, at 12 o'clock noon, and upon the faith of the said statements and declarations as aforesaid by the employer, it is hereby agreed and declared that, subject to the provisions and conditions herein contained, which shall be conditions precedent to the right on the part of the employer to recover under this bond, the company shall at the expiration of three months next after proof of a loss, as hereinafter mentioned, has been given to the company, make good and reimburse to the employer to the extent of the sum of ten thousand dollars, and no further, all and any pecuniary loss sustained by the employer of moneys, securities, or other personal property belonging to the employer in the possession or custody of the employé, or for the possession of which he is responsible, directly occasioned by larceny or embezzlement on the part of the employé in connection with the duties of the office or position in the service of the employé hereinbefore referred to, as the same have been stated in writing by the employer to the company, and occurring during the continuance of this bond, and discovered during said continuance, or within six months thereafter, or within six months from the death or dismissal or retirement of the employé from the service of the employer within the period of this bond, whichever of these events shall first happen: provided, always, that said company shall not be liable by virtue of this bond for any mere error of judgment or injudicious exercise of discretion on the part of said employé in and about all or any matters wherein he shall have been vested with discretion either by instruction or rules and regulations of the said employer. And it is expressly understood and agreed that the said company shall in no way be held liable hereunder to make good any loss that may accrue to the said employer by reason of any act or thing done or left undone by the said employé in obedience to or in pursuance of any direction, instruction, or authorization conveyed to and received by him from said employer, or its duly-authorized officer in its behalf; and it is expressly understood and agreed that the said company shall in no way be held liable hereunder to make good any loss by fire, robbery, theft, or otherwise that said employer may sustain, except by the direct act or connivance of the said employé. The following provisions also are to be observed and binding as a part of this bond: That the company shall be notified in writing, addressed to the president of the company, at its office, in the city of Baltimore, state of Maryland, of any acts of omission or of commission on the part

of the employé which may involve a loss for which the company is responsible hereunder, immediately after the occurrence of such act shall come to the knowledge of the employer. That any claim made in respect of this bond shall be in writing, addressed to the president of the company as aforesaid, immediately after the discovery of any loss for which the company is responsible hereunder, and within six months after the expiration or cancellation of this bond as aforesaid. And upon the making of such claim this bond shall wholly cease and determine, as regards any liability for any act or omission of the employer committed subsequent to the making of such claim, and it shall be surrendered to the company on payment of such claim. That if the employer shall at any time hold, concurrently with this bond, any other bond or guaranty of surety from or on behalf of the employé, the employer shall be entitled, in the event of loss by default of the employé, to claim hereunder only such proportion of the loss as the amount covered by this bond bears to the whole amount of security carried, whether valid or not. That if the company shall so elect, this bond may be canceled at any time by giving one month's notice to the employer, and refunding the premium paid, less a pro rata part thereof for the time said bond shall have been in force, remaining liable for all or any default covered by this bond which may have been committed by the said employé up to the date of such determination, and discovered and notified to the company within the limit of time hereinbefore provided for. That the employer shall, if required by the company, and as soon thereafter as it can reasonably be done, give all such aid and information as may be in its power, at the cost and expense of the company, for the purpose of prosecuting and bringing the said employé to justice, or for aiding the company in suing for and making effort to obtain reimbursement from the employé, or his estate, of moneys which the company shall have paid or become liable to pay by virtue of this bond. That the company shall not be liable under this bond for the amount of any balance that may be found due the employer from the employé, and which may have accrued prior to the date hereof, and which may be discovered within the period hereof; it being the true intent and meaning of this bond that the company shall be responsible aforesaid for moneys, securities, or property diverted from the employer through fraud or dishonesty on the part of the employé within the period specified in this bond. That this bond will become void as to any claim for which the company is responsible hereunder to the employer, if the employer shall fail to notify the company of the occurrence of such act immediately after it shall have come to the knowledge of the employer. And if, without previous notice to and consent of the company thereto, the employer has intrusted or shall intrust the employé with moneys, securities, or other personal property, after having discovered any act of dishonesty, or condones any act for which the company may be liable hereunder, or makes any settlement with the employé for any loss hereunder, this bond shall be null and void, and any willful misstatement or suppression of facts in any claim made hereunder renders this bond void from the beginning. That no suit or action of any kind against the company for the recovery of any claim upon, under, or by virtue of this bond shall be sustainable in any court of law or equity unless such suit or action shall be commenced, and the process served on the company, within the term of twelve months (365 days) next after the presentation of such claim; and, in case any suit or action shall be commenced against the company after the expiration of the said period of twelve months, the lapse of time shall be deemed as conclusive evidence against the validity of the claim thereby so attempted to be enforced. That the company, upon the execution of this bond, shall not thereafter be responsible to the employer under any bond previously issued to the employer on behalf of said employé, and, upon the issuance of any bond subsequent hereto upon said employé in favor of said employer, all responsibility hereunder shall cease and determine, it being mutually understood that it is the intention of this provision that but one (the last) bond shall be in force at one time, unless otherwise stipulated between the employer and the company. That no one of the above conditions, or the provisions contained in this bond, shall be deemed to have been waived by or on behalf of said company unless the waiver be clearly expressed in writing, over the signature of its president and secretary, and its seal thereto affixed. And the said employé doth hereby, for himself, his heirs, executors, and administrators, covenant and

agree to and with the said company that he will save, defend, and keep harmless the said company from and against all loss and damage, of whatever nature or kind, and from all legal and other costs and expenses, direct or incidental, which the said company shall or may at any time sustain or be put to (whether before or after any legal proceedings by or against it to recover under this bond, and without notice to him thereof), or for or by reason or in consequence of the company having entered into the present bond. In witness whereof, the said J. B. Donnally Company, Limited (the said employé), has hereunto set his hand and seal, and the said company has caused this bond to be signed by its president and its acting secretary, and its seal to be hereunto affixed, this twentieth day of March, one thousand eight hundred and ninety-six.

"Signed, sealed, and delivered by the said employé in the presence of

"J. B. Donnally Co., Ltd.

"[Signed]                                     J. B. Donnally, President.    [Seal.]

"Employé.

"[Signed]   P. W. Dyer.   [Signed]   Edwin Warfield, President.
"[Signed]                                     Tho. L. Berry, Acting Secretary.   [Seal.]"

The depositions of O'Neill and Theis, officers of the plaintiff company, showed that there was found due from the employé to the plaintiff in error the sum of $6,634.15 on settlement of accounts. The bond sued on was renewed, as averred in the petition, on the 1st day of May, 1897; the renewal to begin March 20, 1897, at the expiration of the bond as first given, and to continue till March 20, 1898. O'Neill and Theis admitted that before this renewal was granted they gave the defendant in error a certificate in substance as follows:

"To the Fidelity and Deposit Company of Maryland: This is to certify that on the 17th day of March, 1897, the books and accounts of the J. B. Donnally Co., Limited, in our employ as agents, were examined by us, and we found them correct in every respect, and all moneys handled by him accounted for. He has performed his duties in an acceptable and satisfactory manner, and we know of no reason why the guaranty bond should not be continued. His salary is now commissions, and he is employed as agents.

"Dated at Pittsburg, Pa.

"[Signature]                                     Monongahela Coal Company.

"Wm. W. O'Neill, Prest.

"April 20th, 1897."

They both testified that the books had not really been examined as stated in the certificate. Other facts are stated in the proper connection in the opinion.

The court, on request, instructed the jury to find for the defendant the Fidelity & Deposit Company of Maryland. The court said:

"The certificate must be taken as true, so far as this surety company has a right to take it, as to them, whether as a matter of fact it was false to O'Neill or not. There was nothing done by the surety company to mislead O'Neill into giving this certificate. The inclosing the blank was a mere form, but it was essential that he should give the certificate, if he expected the renewal of the contract of indemnity. Therefore he chose to give it. It may have been false that they never examined the books, but the indemnity company had a right to take the fact stated as true; and the suggestion that it was a trick of the indemnity company does not count for anything, unless it be shown that O'Neill was misled into a condition of things, which does not appear by the testimony. It was a voluntary contribution of O'Neill's. He could have declined to send it, or that he would not send it, because he had not examined the books; but, when he did say that he examined the books and found them correct, the indemnity company had a right to take that fact to be true, and did take it for true, and acted upon it. Unquestionably, as between these contracting parties, O'Neill is estopped from denying that certificate, in law. He cannot be heard to deny it to screen himself from it, in law, as between the two contracting parties. Of course, that would cover all antecedent matters. But, further, the inducement to the surety company to enter into the second contract was a false inducement. That inducement was in the statement of O'Neill that he had examined the books and found them correct. I think there must be a verdict for the indemnity company."

Verdict and judgment were rendered for the defendant the Fidelity & Deposit Company of Maryland. The plaintiff in error assigns as error the instructions of the court.

W. S. Benedict, for plaintiff in error.

Harry H. Hall and P. M. Milner, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case, delivered the opinion of the court.

The bond sued on is one of indemnity, but it is a contract imposing different obligations on the several makers. The plaintiff in error is called in the bond the "employer," the defendant in error the "company," and the J. B. Donnally Company, Limited, the "employé." These terms will be used, for brevity. The contract first recites that the employé "has been required to furnish a bond for his honesty in the performance of his duties in said position" (meaning as agent for the employer). After reciting the consideration, and making other recitals not material here, the agreement is that "the company shall * * * make good and reimburse to the employer, to the extent of the sum of ten thousand dollars, * * * all and any pecuniary loss sustained by the employer, of moneys, securities, or other personal property, belonging to the employer in the possession or custody of the employé, or for the possession of which he is responsible, directly occasioned by larceny or embezzlement on the part of the employé in connection with the duties of the office or position. * * *" The employer, if required by the company, is to give aid and information "for the purpose of prosecuting and bringing the said employé to justice. * * *" It is declared by its terms that the "true intent and meaning" of the bond are "that the company shall be responsible * * * for moneys, securities, or property diverted from the employer through fraud or dishonesty on the part of the employé. * * *" These provisions all relate to the obligations of the company. From them it appears that the liability of the company is restricted to claims based upon the larceny, embezzlement, or at least the dishonesty, of the employé. The obligation of the company does not cover every liability or claim which might accrue in favor of the employer and against the employé. A loss by carelessness or inattention to business might be the foundation of a just claim against the employé by the employer, which would impose no liability on the company by the terms of its obligations in the bond. If, with the consent of the employer, expressed or implied from the course of dealings between it and the employé, the latter used or retained moneys, charging itself with them, it would be no obligation covered by the insurance or indemnity of the company. It follows, therefore, that the fact that the account between the employer and the employé shows an indebtedness from the latter to the former is not sufficient of itself to support a claim on the bond against the company. To recover in an action on a bond, defense being made, there must be an allegation of a breach of it, sustained by evidence. There is neither allegation nor proof that the employé has, through fraud or dishonesty, diverted from the employer moneys,

securities, or other property, nor that it has committed larceny or embezzlement of such property. O'Neill and Theis, the only witnesses, testify that the course of business between the employer and employé was for the latter to transmit the notes of the purchasers for coal sold on credit, and subsequently out of cash sales to retain commissions on account of the sales for which the notes were given. Such dealings made it necessary to keep accounts of debit and credit. Fraud and dishonesty are not to be presumed. The law presumes that every man acts honestly, till the contrary is shown. No fact is shown tending to prove that the debt originated in the fraud or dishonesty of the employé. As late as the 20th of April, 1897, O'Neill, the president of the employer company, furnished a certificate that the employé had performed its duties in an acceptable manner, "and that we know of no reason why the guaranty should not be continued." The amount of the debt of the employé to the employer is $6,634.15. Part of this sum ($1,088.64) was collected in 1896. The remainder was collected in April and June of 1897. J. B. Donnally, Sr., the president of the employé company, died August 29, 1897. The fact that on settlement the employé owed the employer was discovered November 24, 1897, nearly three months after Donnally's death. Under the circumstances, the fact that the employé, on settlement, is found to owe the employer, is not sufficient to show that the debt originated in fraud or dishonesty, in embezzlement or larceny.

It is alleged in the petition that the company—

"Did bind and obligate itself unto your petitioner, in the sum of ten thousand dollars, that it would save, defend, and keep harmless your petitioner from and against all loss and damage whatsoever, of any nature or kind, and from all other legal costs and expenses, direct or indirect, incidental thereto, which petitioner shall or may at any time sustain."

The bond sued on does not contain this or any similar obligation on the part of the company to the employer. Such language, in substance, is in the latter part thereof, but it is the obligation of the employé (the J. B. Donnally Company, Limited) to the company (the Fidelity & Deposit Company of Maryland). That part of the bond is as follows:

"And the said employé doth hereby * * * agree that he will save, defend, and keep harmless the said company from and against all loss and damage of whatever nature and kind, and from all legal and other costs and expenses, direct or incidental. * * *"

This part of the bond is the agreement of the employé to reimburse the company if it has to pay anything to the employer by reason of the contract. It contains no such obligation of the company to the employer.

There was no evidence, in our opinion, before the jury, to sustain the allegations of the petition, or to justify a recovery in the case. It was proper to direct a verdict for the Fidelity & Deposit Company of Maryland. The judgment of the circuit court is affirmed.