## NATIONAL SURETY CO. v. McCUTCHEON et al. (No. 10932.)*

(Court of Civil Appeals of Texas. Fort Worth. Jan. 31, 1925. Rehearing Denied March 7, 1925.)

**1. Principal and agent ⬛48—Relation is fiduciary, requiring good faith and fair dealing on part of agent.**

Relation of principal and agent is fiduciary, requiring the most perfect loyalty and utmost good faith, the strictest integrity, and fairest dealing on part of agent to his principal.

**2. Insurance ⬛430—Insurance agent's failure to remit collected premiums held to constitute "fraud" and "dishonesty" within meaning of indemnity bond.**

Insurance agent's unexplained failure to remit to his principal sums due it as premiums which agent had collected *held*, in view of fiduciary relation, to amount to "fraud" and "dishonesty," within the meaning of bond indemnifying agent's surety against loss sustained by fraud or dishonesty of such agent. (Citing Words and Phrases, First and Second Series, Fraud and Dishonesty.)

### On Motion for Rehearing.

**3. Appeal and error ⬛835(3) — Facts not shown in agreed statement on which case tried below not considered on rehearing.**

Where agreed statement on which case was tried below was certified by court to be correct as provided in Rev. St. art. 1949, and Court of Appeals disposed of case on such agreed statement, as provided in article 1607, it will not, on rehearing, give weight to facts not shown by such agreed statement, and not certified by trial judge, as basis for reversal of conclusion originally announced.

**4. Insurance ⬛430—Insolvency of insurance agent failing to remit collected premiums no defense in action on bond, where agent mingled such funds with his own without knowledge of principal.**

Fact that agent, failing to remit collected premiums, became insolvent, constituted no defense in action on bond given to indemnify his surety against loss from agent's fraud or dishonesty, where agent mingled such funds with his own without knowledge of his principal.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by C. E. McCutcheon and another against the National Surety Company and another. Judgment for plaintiffs, and named defendant appeals. Affirmed.

Beall, Worsham, Rollins, Ryburn & Ryburn, of Dallas, for appellant.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellees.

CONNER, C. J. In 1921, one Jack Price was acting as agent for a number of insurance companies doing business in the city of Wichita Falls, Tex., among which was the Bankers' & Shippers' Insurance Company of New York. Price, as principal, and the appellees herein, McCutcheon & McGregor, executed a bond payable to said insurance company securing performance on the part of Price of all his duties as agent and the faithful and full payment of all premiums collected by him for his principal. Concurrently with the execution of this bond, Price and the appellant in this case, the National Surety Company, entered into a bond payable to McCutcheon & McGregor, indemnifying them against loss by reason of having executed the agency bond of Price to the Bankers' & Shippers' Insurance Company.

This suit was instituted by McCutcheon & McGregor against the National Surety Company, setting out the foregoing facts and alleging that Price, as agent, had collected the sum of $1,648.74 as premiums due his principal, the Bankers' & Shippers' Insurance Company, for which he had failed to account, and which he had wrongfully appropriated to his own use, and that by reason of such default and wrongful conversion McCutcheon & McGregor had been compelled,

---

in fulfillment of the terms of the indemnifying bond executed by Price and McCutcheon & McGregor to said insurance company, to pay and had paid to said insurance company the amount of said Price's shortage and defalcation. For which amount the plaintiff sought recovery.

The defendant, appellant here, appeared and answered, pleading certain limitations of the bond upon which plaintiffs had declared. The bond was executed by Jack Price as principal and the National Surety Company, a corporation, as surety in the sum of $31,000, payable to the appellees McCutcheon & McGregor. It recited the execution of the indemnity bond that had been given by Jack Price and McCutcheon & McGregor, and further contained the following terms important in the determination of this case, to wit:

"Whereas, said obligees executed said bond upon the agreement then and there had and understood that the principal would, subject to the terms, conditions, and limitations herein contained, indemnify the obligees, and each of them, against any and all liability of whatsoever kind or nature under the bond of said principal as agent, and reimburse, make good and pay over to them and each of them any and all sums and amounts of money which they or either of them may pay or become liable to pay by reason of having signed such bond, then this obligation to be void, otherwise of full force and virtue.

"This bond is executed by the company upon the following express conditions and limitations:

"First. The liability of the Company hereunder shall include only loss sustained by the obligees, herein by reason of fraud, or dishonesty of the principal in connection with the duties pertaining to the office or position of agent and occurring during the term beginning on the 1st day of July, A. D. 1921, and before the termination of this bond."

The execution of the several bonds mentioned is not disputed, nor is there any controversy as to their terms. Nor is it disputed that Jack Price, as agent of the Bankers' & Shippers' Insurance Company, collected for that company premiums justly due it in the sum of $1,648.74, which appellees had been required to pay. Appellant's sole defense was and is that Price's failure to account for said premiums did not constitute "fraud or dishonesty" within the meaning of the limitation above set out. A trial before the court without a jury failed, however, to sustain this defense, and resulted in a judgment for appellees against Jack Price and the appellant surety company in the sum of $1,648.74, with legal interest thereon from the 1st day of October, 1922, amounting to $112.10, aggregating $1,760.84, together with interest thereon at the rate of 6 per cent. from this date until paid.

The case was tried below and is presented here upon an agreed statement of facts. They are such as without doubt entitled appellees to the judgment, unless it must be said, as appellant insists, that the facts "do not establish fraudulent or dishonest conduct on the part of Jack Price." The agreed statement shows, in addition to what we have said, that Jack Price was required under his agency contract to collect and remit to the Bankers' & Shippers' Insurance Company the latter's portion of all premiums on policies issued by him on behalf of said company; that during said time it was the custom of Jack Price, as well as the custom of local fire insurance agents generally in the vicinity of Wichita Falls, to charge himself with the amount of premiums due on policies delivered and credit himself with the amount of commissions allowed under his agency contract, and, within a period of from 60 to 90 days after the issuance of such policies, he was required under his agency contract to remit to the Bankers' & Shippers' Insurance Company the amount shown to be owing by him to it; that in all he collected for said company premiums due in the amount of $5,848.53, of which, from time to time, he remitted the sum of $4,199.-29, leaving a balance of $1,648.74, which he has collected but has not remitted; and that for this deficiency McCutcheon & McGregor had been called upon to pay and did pay the Bankers' & Shippers' Insurance Company in settlement of the claims made by said insurance company against them under the bond executed by them to such insurance company.

The contention of appellant, in substance, is that inasmuch as it was the custom of Jack Price to charge on the books kept by him premiums due his principal and credit himself with commissions earned, making remittances at stated intervals; the relation between Price and his principal was that of debtor and creditor, and that his mere failure to account to his principal for the said sum of $1,648.74 due it, did not constitute dishonesty or fraud, but, on the contrary, amounts to no more than mistake, negligence, error of judgment, or breach of contract, and that therefore the appellant was not liable under the terms of its bond.

The rule of law that a surety is not to be held beyond the terms of his contract is too well settled to require the citation of authority. But in the agreed statement of facts before us we find no explanation of Price's failure to account to his principal for the premiums due it. If in fact he became insolvent or because of some calamity was unable to make remittances between time he collected the premiums and the time when, in accordance with his custom, he was required to make remittances, it is not shown by the agreed statement of facts. In other words, his failure to remit is wholly unexplained, and the question is: Does that

unexplained failure to remit amount to "fraud or dishonesty," within the meaning of the terms of appellant's bond? In the absence of an explanation, the inference seems plain that he converted the premiums to his own use or to the use of some other person.

[1] The recognized rule is that:

"The relation of principal and agent is fiduciary, requiring the most perfect loyalty and the utmost good faith, the strictest integrity, and the fairest dealing on the part of the agent to his principal." Hahl v. Kellogg, 42 Tex. Civ. App. 636, 94 S. W. 389; Rand v. Davis (Tex. Civ. App.) 27 S. W. 939; Perry on Trusts, § 206.

The case of Steere v. Stockyards National Bank (Tex. Com. App.) 256 S. W. 586, was one in which a cattle commission broker, Herbert Graves, was engaged, among other things, in selling cattle and other live stock for others upon the market at Fort Worth. His habit of doing business was when sales were made to deposit in the Stockyards National Bank the amounts paid for cattle sold by him. Such deposits were made in his own name, and he would later remit to his principals, stockmen in various parts of the state, amounts for which he had sold the cattle, less his commissions. Graves failed in business and at the time of such failure was indebted in a large amount to various stockmen for whom he had sold cattle, who sued the bank to recover the several amounts due them. It appeared, at least inferentially, that Graves' custom of so making his deposits and remittances was known to his principals, and it was held in an opinion by the Commission of Appeals, approved by the Supreme Court, that the relation between the bank and Graves was that of creditor and debtor, and hence that the bank was authorized and required to pay Graves' checks when presented to it for payment, but that the relation between Graves and the stockmen was that of trustee and cestui que trusts, and that "sums deposited by Graves and not so paid out on his checks constituted a trust fund to which the owners of the stock were entitled. The authorities sustaining that conclusion are collated in the opinion referred to and need not be here repeated.

In Perry on Trusts, vol. 1, § 447, it is said:

"The trustee must not mingle the trust fund with his own. If he does, the cestui que trust may follow the trust property, and claim every part of the blended property which the trustee cannot identify as his own."

In Mechem on Agency, vol. 1, § 1327, it is said:

"It may be stated as a general rule that the agent is bound to account to his principal for all money and property which may come into his hands by virtue of the agency."

And again in section 1339, in discussing the necessity of demand before the principal should sue his agent for funds unaccounted for, it is said:

"As a general rule in such cases, it may be presumed, it has been said, 'That payment has been delayed by reason of the want of safe and convenient means of transportation or of some other good and sufficient cause, and that the recipient of the money, still considering himself entitled to no more than enough to reasonably compensate him for his services in collecting, will pay it over on demand.' This rule, however, presupposes that the agent has duly performed his duty of notifying the principal of the receipt of the money. But where he has not given such notice, and so long a time has elapsed since the collection of the money as to rebut the presumption above referred to, 'he may well be considered as having appropriated it to his own use, and then neither law nor reason requires that before he can be sued for his nonfeasance, he should be requested to do what his conduct sufficiently indicates his determination not to do.'"

See, also, to the same effect, section 361 in Bowers' Law of Conversion.

[2] So here we think it must be held that the premiums collected by Price and due his principal, the Bankers' & Shippers' Insurance Company, undoubtedly constituted a trust fund and good faith on his part required him to remit such fund to his principal, and an unexplained failure to so do certainly amounted to wrongdoing.

In Story's Equity Jurisprudence, vol. 1 (14th Ed.) § 263, it is said:

"Fraud indeed, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another."

The same author again says, in section 267:

"It has been said that fraud cannot be exactly defined so as to fit every case but, generally speaking, fraud is any act, omission, or concealment which involves a breach of legal duty, trust, or confidence, justly reposed, and is injurious to another, or by which an undue and unconscientious advantage is taken of another."

The foregoing definitions of fraud, it seems, have been supported by numerous authorities. See Words and Phrases, vol. 3, p. 2944. In Words and Phrases, vol. 2, Second series, p. 71, it is said:

"'Fraud' and 'dishonesty' are synonymous terms. Whatever is dishonest is fraudulent in foro conscientiæ, and is so treated in a court of equity." (Citing cases.)

We conclude from the agreed statement of facts before us that the trial court properly held that the unexplained failure of

Price to remit to his principal, the Bankers' & Shippers' Insurance Company, the premiums collected by him and due that company, amounted to fraud and dishonesty within the meaning of the indemnifying bond given by appellant in this case, and the judgment below will accordingly be affirmed.

### On Motion for Rehearing.

In illustrating the fact that no explanation of the agent Price's failure to account for the premiums collected by him, we stated in our original opinion that—

"If in fact he (Price) became insolvent or because of some calamity was unable to make remittances between the time he collected the premiums and the time when, in accordance with his custom, he was required to make remittances, it is not shown by the agreed statement of facts."

Appellant in its motion now says, among other things, that—

"As already stated, we think that counsel will agree with us that the whole case was tried and submitted to this court upon the theory that Jack Price was insolvent. But for this fact, no reason appears why he did not pay, or could not be compelled to pay."

And appellee, in reply to the motion for rehearing, says:

"We conclude that Jack Price was insolvent on the 30th day of September, 1922, and at all times since said date, and respectfully request this court to consider the motion for rehearing in the light of this admission."

As stated in our original opinion, the case below was tried upon an agreed statement of facts in accordance with article 1949, Rev. Statutes. This article provides:

"The parties may in any case submit the matter in controversy between them to the court upon an agreed statement of facts made out and signed by them or their counsel, and filed with the clerk, upon which judgment shall be rendered as in other cases; and, in such case, the statement so agreed to and signed and certified by the court to be correct, and the judgment rendered thereon, shall constitute the record of the cause."

And article 1607, Rev. Statutes, relating to proceedings in cases in the Courts of Civil Appeals, provides, among other things, that—

"In all case of appeal or writ of error to the courts of civil appeals, the trial shall be on a statement of facts or agreed statement of the pleadings and proof as agreed upon by the parties or their attorneys, or the conclusions of law and fact, as the case may be, certified to by the judge of the court below."

The agreed statement upon which the case was tried below was certified by the court to be correct, as provided in article 1949, above, and pursuant to article 1607 we proceeded to dispose of the case upon that statement, and nowhere in the statement does it appear that Jack Price was insolvent at or during the time he failed to report his collections as he was required to do under his contract of agency, and it is conceded by appellant, as will be seen from the quotation from its motion above, that no fact, other than Price's insolvency, appears "why he did not pay or could not be compelled to pay."

[3, 4] On original hearing, we disposed of this case upon the agreed statement, agreed to by counsel below and certified to by the trial judge in accordance with the requirements of the statutes above quoted, and we do not feel disposed to give weight to a fact not shown by such agreed statement and not certified by the trial judge as a basis for a reversal of the conclusion originally announced. But if it be conceded that this should now be done and that we should accept the admission of counsel for appellees that Price was insolvent, we nevertheless think this fact of itself would constitute no defense. While the agreed statement of facts shows that it was Price's habit to deposit in the bank premiums collected for his principal in his own name, it nowhere appears that this was done with the knowledge of his principal. His contract provided that he should make remittances of his premiums within at least 90 days from his collection, and this privilege, permitted doubtless as a matter of convenience, by no means authorizes the conclusion that Price had the right to mingle and use the moneys of his principal with those of his own. Had it appeared that Price upon his collection of the premiums for his principal had deposited them in the name of the principal and that the moneys had been lost by robbery, or failure of the bank, or by some vis., major, then indeed it might be said that his failure to account for the premiums would not constitute fraud or dishonesty within the meaning of appellant's guaranty. But as trustee, as we think was his true relation to his principal, it was his duty upon the collection of premiums to hold them for his principal and no one else, and to make remittances thereof as provided in his contract, and if in violation of such duty he undertook to mingle such funds with his own and use them for purposes of his own, he did so assuming the hazard of his insolvency, and cannot now be heard to say that he is excused on that ground. See Insurance Co. v. Gloge, 229 F. 327, 143 C. C. A. 446, Ann. Cas. 1917C, 416.

The cases of Dixie Fire Ins. Co. v. Nelson, 128 Tenn. 70, 157 S. W. 416, by the Supreme Court of Tennessee, Williams v. U. S. Fidelity & Guaranty Co., 105 Md. 490, 66 A. 495, Monongahela Coal Co. v. Fidelity & Deposit Co., 94 F. 732, 36 C. C. A. 444, and Sinclair & Co. v. National Sure-

ty Co., 132 Iowa, 549, 107 N. W. 184, cited in behalf of appellant, we think are distinguishable from this case. In the first three cases referred to, the warranty was against "larceny" or "embezzlement" of an employee, which is distinguishable in the authorities from "fraud" or "dishonesty," covered by the guaranty in this case, while the case last referred to was disposed of, among other things, on the ground of an erroneous charge.

We conclude that the motion for rehearing should be overruled.