**ÆTNA CASUALTY & SURETY CO. v. FIRST TRUST & SAVINGS BANK.**

No. 6625.

Circuit Court of Appeals, Fifth Circuit.

Dec. 21, 1932.

Rehearing Denied Jan. 19, 1933.

Harry Preston Lawther, of Dallas, Tex., for appellant.

J. W. Cocke, of Waco, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The First Trust & Savings Bank sued Ætna Casualty & Surety Company at law on a fidelity bond because of dishonest acts of an employee Anderson. Both sides moving for a directed verdict, the court directed it for the bank. The surety company appeals, alleging that action to be error because the loss claimed was not discovered within twelve months from the termination of the bond and because no loss occurred during the period covered thereby.

By the bond dated July 6, 1928, the surety company "in consideration of an annual premium agrees to indemnify the Bank against direct loss sustained while this bond is in force and discovered as hereinafter provided" through the dishonest act of fourteen employees, including Anderson, or by burglary or other named causes. Further material provisions with italics added for emphasis are these:

"§ 2. This bond covers losses which shall be sustained after noon, standard time at the insured's main office, of the date hereof and prior to noon, standard time as aforesaid, of the effective *date of the cancellation* of this bond *as provided in § 14 hereof*, and in case of losses *caused by any employee* or employees as to whom this bond prior to such cancellation shall have *terminated as provided in § 15 hereof*, shall be discovered before the expiration of one year from *such termination,* and in case of all other losses before the expiration of one year from the date of *such cancellation.*

"§ 14. This bond shall be deemed *cancelled* at noon, standard time as aforesaid, upon the effective date *specified in a written notice* served by either party hereto on the other or sent by registered mail. * * *

"§ 15. This bond shall *terminate* as to any employee (a) at noon, standard time as aforesaid, upon the effective date *specified in a written notice* served on the insured or sent by registered mail. * * * (b) Immediately upon the discovery of a default hereunder on the part of such employee."

Anderson's defalcations for which the verdict was directed occurred between the date of the bond and July 6, 1929, but were not discovered until September 4, 1930.

■ The bond on its face is a continuing one, not conditioned on prepayment of premium. The protection is furnished on the credit of the bank. It begins at the date of the bond and continues until the bond is either "cancelled" as a whole or "terminated" as to a particular employee in the manner stated in sections 14 and 15. Cancellation as a whole is contracted to be accomplished by a written notice served personally or by registered mail. Termination as to a particular employee is either by such a notice or by discovery of his default. A loss caused by an employee to be recoverable must not only occur before the bond is canceled or terminated as to him, but it must be discovered within one year from its termination as to him. The contention here made is that on July 6, 1929, the bond was canceled, and that discovery of loss on September 4, 1930, was not within twelve months therefrom. There is no proof of any formal written notice of cancellation or termination at any time nor of any discovery of Anderson's defaults which would terminate the bond as to him until September 4, 1930. But it is shown that just before July 6, 1929, the bank's vice president told the surety company's local agent that the bank did not wish the $25,000 coverage of the bond spread over several years, and in order to have the full coverage for each year it wished to change its bond to another company for the coming year. The agent wrote a bond on July 6, 1929, in another company, and no further premium was charged to or collected from the bank for a continuance of the bond in suit. The agent notified the surety company of the situation, and it asked the agent to take up the old bond. At a date not stated, the agent asked the bank for a surrender of the bond. The bank stated the bond was at Austin in the hands of the banking commissioner, and on January 3, 1930, wrote him for its return, that the bank might satisfy the surety company. The bond was not surrendered, but on January 6, 1930, the surety company prepared and had the bank to sign a paper as follows: "The Ætna Casualty & Surety Company. Release: To be attached to and form a part of bond No. F B

318

82374, dated July 6, 1928, on behalf of various employees of First Trust & Savings Bank, Waco, Texas. In consideration of the Ætna Casualty & Surety Company having agreed to waive any further premium charge on this bond we hereby release the Ætna Casualty & Surety Company from liability for any and all acts committed by various employees of First Trust & Savings Bank on and after the 6th day of July, 1929."

Prior to the signing of this instrument there had been no termination of the bond in the manner pointed out in it. If by consent of the parties some other method could be substituted, there is no clear proof that this had been done. What happened may well have given rise only to a misunderstanding; the agent of the surety company understanding that the bond was canceled, and the bank's vice president understanding, as he swears was his intention, that liability under the bond for further losses was to stop at July 6, 1929, but that the bond was to be continued as covering those before that date, if any, until discovery of them. The surety company seems to have assented to the latter view for it drew up, not an agreement that the bond had been canceled on July 6, 1929, but a rider to be attached to it stating a compromise whereby the company gave up all claim for premium since that date, and in return was released from liability for defaults thereafter occurring. This agreement recognizes that, until it was executed, a claim for such premium and a liability for such defaults did exist. A contractual limitation to bar just rights should be made clearly to appear. The District Judge could well hold that no cancellation or termination of the bond twelve months before September 4, 1930, was shown.

The contention that no loss occurred between July 6, 1928, and July 6, 1929, is based on Anderson's method of operation. He would take money delivered on general deposit and withhold the deposit tickets from the books so the cash would not be put out of balance, then when it became necessary to meet the demands of those depositors their deposit tickets would be posted to their credit and money from new deposits would go into the bank's cash to cover them, the new deposit slips being in turn withheld, generally with an excess of cash represented by them. In this manner more and more money was abstracted until in September, 1930, it got too big to hide. It is argued that thus after July 6, 1929, Anderson had repaid all that he had taken previously, and was short only

the money last taken in for which deposit slips were being withheld at the time of discovery. The reasoning is wholly fallacious. The money taken on general deposit became at once the money of the bank, all of it. Whenever Anderson took out any actual money a loss occurred to the bank. By putting new deposits into the bank's cash he paid nothing back, but only put the bank's own money where it belonged. Royal Indemnity Co. v. North Texas National Bank (Tex. Com. App.) 25 S.W.(2d) 822, and cases cited therein. The sums recovered were all taken in the year covered by the bond.

Judgment affirmed.