## CONTINENTAL CASUALTY CO. v. FIRST NAT. BANK OF TEMPLE.

### No. 9476.

Circuit Court of Appeals, Fifth Circuit.

Jan. 17, 1941.

Rehearing Denied Feb. 11, 1941.

Allen Wight, of Dallas, Tex., for appellant.

Walker Saulsbury and Byron Skelton, both of Temple, Tex., for appellee.

Before FOSTER and SIBLEY, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

This is an appeal by the surety company from an adverse judgment on its bond given to protect the bank against dishonesty of its employees. The principal complaint of the appellant is that the evidence was such that the jury's verdict was and could have been based only upon speculation, and but for certain alleged erroneous rulings upon evidence and instructions to the jury by the lower court, no definite loss could have been established under the bond.

The plaintiff was the successor to a previous bank of the same name, except that, as was done in numerous instances in over-night reorganizations throughout the country following the chaotic banking conditions of the early 1930's, the word "of" was substituted for "in" as a part of the name of the new bank, and as in the other instances, took over the liquid assets and assumed all liability to the depositors. The persons whose dishonesty is involved were employees of both banks, and were shown to have been guilty of similar acts both before and after the transfer.

The obligation of the bond was to "indemnify * * * against the direct loss, sustained while this bond is in force and discovered as herein provided, of any money or securities, or both as defined in Section 5 hereof, in which the insured has a pecuniary interest, or held by the insured as collateral or as bailee and whether the insured is liable therefor * * * through any dishonest act wherever committed of any of the employees * * * whether acting alone or in collusion with others * * *."

Section 5 of the bond defined the word "money" in the usual terms, and securities as including: "* * * money orders (express, postal, pension, bank), bonds, debentures, scrip, warrants, checks, coupons, drafts (demand and time), bills of exchange, acceptances, promissory notes, certificates of deposit, certificates of stock, warehouse receipts, bills of lading and all other instruments of negotiable character, as respects which, if negotiated, the Insured would have no recourse against an innocent holder."

In its original petition, the plaintiffs sued upon some nineteen items. The court, prior to the trial before the jury, appointed an accountant with powers of an examining master, who, after a lengthy hearing of witnesses and consideration of documentary evidence, made a report concluding that only ten items had been proven. Thereupon, the plaintiff amended its petition so as to demand payment only of the items so recognized by the accountant. The case before the jury was, by consent, tried upon this note of evidence plus mainly the testimony of expert accountants, including the one who had acted as the examiner. The latter, in his report to the court, concluded with the statement that, of the total of $17,769.89, defalcations of the employees, "$12,204.46 represents a shortage in the First National Bank of Temple (the new bank) and $5,577.51 represents a shortage in the First National Bank in Temple" (the old bank).

In the course of the trial, the court permitted Upleger, the examining accountant, and other experts to testify with respect to the several transactions upon which the items of the claim are based, to the effect that each had traced the same through the books and records of the bank. Thereupon they were interrogated and gave answers to questions in a manner of which the following is an example: "Q. As a result of your work with respect to the Navratil and Motol items, will you state, in your opinion the effect on the bank's assets of Lastovica, having withheld those deposit slips?"

To this question and all similar questions, counsel for defendants objected that it was a legal question, or, in effect, the issue which the jury had to decide. The objection was overruled and the witness answered as follows: "A. The assets were reduced by the amount of the withheld deposit slips."

This could only have been true if the employees, at that time, had actually

withheld or withdrawn the money represented by the deposit slips from the bank. If, on the other hand, they had placed it with the cash and given some other depositor credit therefor, in order to cover up money previously withheld or withdrawn and charged to the latter's account, the bank's assets would neither have been increased nor diminished, because, while it would have reduced its liability to the one whose funds had previously been taken, by the same act, it would have become liable to the new depositor for the amount represented by this deposit slip or entry in his bank book. It must be remembered that the insurance was against "all direct loss, sustained while this bond is in force * *." A fair interpretation of this language would seem to mean an actual present loss, as distinguished from a theoretical or bookkeeping loss. In other words, some action which reduced the available assets in the hands of these employees as against its liabilities to depositors, creditors, and stockholders.

■ . The appellant also complained of the following charge to the jury with respect to the testimony of these experts: " 'On the trial of this cause, gentlemen of the jury, there was testimony given by witnesses, and admitted by the Court as testimony by experts in the handling of banking affairs and knowledge of bookkeeping, in which said witnesses were permitted to testify, and did testify, as to when losses occurred with reference to each of the respective ten items made the basis of plaintiff's action herein. That testimony was admissible as testimony of experts as relating to a matter that the jurors will themselves have to arrive at and determine, and in arriving at such determination you will take into consideration the testimony of all witnesses, including the testimony of all witnesses to whose testimony you will give credence, including those who were allowed to testify as experts, as to whether or not a direct loss was sustained by the bank at the time and within the period alleged herein of the ten items, and while the bond was in effect.' (R., 439.)"

In the light of the testimony which these witnesses were permitted to give to the effect that "the assets of the bank were reduced by the amount of the withheld deposit slips", the jury could have reasonably understood, and probably did, that if they believed such statements, then they might render judgment based thereon. On the other hand, if the money actually went into the bank to cover a previous shortgage or withdrawal, then the statement was not true and the bank did not suffer diminution of its assets.

The method used by the employees during the operations of both the old and new banks was that funds having been withdrawn from the accounts of customers, when subsequent deposits were made by other customers, credits therefor were given to those accounts from which withdrawals had been made for the amounts of such new deposits, and the deposit slips were withheld from the records of the bank, so that the books would balance. However, such new deposits only served to cover up the previous withdrawals and the liability of the bank remained the same, being simply switched from the old to the new depositors.

■ It is our view that the experts should have been restricted to giving testimony as to what was actually done in each instance as revealed by the records and to explaining any technical matter involved in banking or accounting. It should have been left to the jury to determine the ultimate question as to whether any of the assets of the bank had or had not been diminished in reaching the final conclusions as to the liability of the defendant. This is especially important where the claim is based upon charges of fraud and dishonesty, which are never presumed and which the plaintiff must establish by a fair preponderance of the evidence and not leave to mere speculation and guess. See 22 C. J. Verbo Evidence, p. 948 et seq., §§ 596 and 597 and authorities in footnotes. See, also, Royal Indemnity Company v. North Texas Nat. Bank, Tex.Com.App., 25 S.W. 2d 822; Aetna Casualty & Surety Company v. First Trust & Savings Bank, 5 Cir., 62 F.2d 316; Schmieder v. Barney, 113 U.S. 645, 5 S.Ct. 624, 28 L.Ed. 1130. Before the plaintiff can recover any part of its claim, it is necessary to show that a direct loss was actually sustained by the dishonest acts of its employees, since the bond sued on became effective and it should not leave that question in a condition of mere speculation. If it has permitted records to become lost or destroyed, or finds it impossible to make the proof for other reasons, then that is not the fault of the defendant. The bank still carries the burden of estab-

lishing its loss, within the terms of the bond, by a fair preponderance of the evidence.

The judgment is reversed and the case remanded for further proceedings, not inconsistent with this opinion.