### EMPLOYERS' LIABILITY ASSUR. CORPORATION, Ltd., v. KOLP.
#### No. 14178.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 21, 1941.

Rehearing Denied April 4, 1941.

D. E. O'Fiel, of Beaumont, for plaintiffs in error.

K. W. Stephenson and D. C. Bland, both of Orange, for defendant in error.

W. B. Handley, of Dallas, for appellant.

Kilgore & Rogers and Ray Bland, all of Wichita Falls, for appellee.

SPEER, Justice.

C. F. Kolp sued the Employers' Liability Assurance Corporation, Limited, Clois L. Edwards and L. C. Grisham, to recover an alleged shortage in funds entrusted to the two last named parties and another employee, James A. King, the latter alleged to be insolvent and beyond the jurisdiction of the court.

Kolp was engaged in several lines of business in Wichita County during the period of time covered in this controversy. Among these lines were a cafe and a filling station, at which he conducted a retail and wholesale business dealing in gasoline and other oil products, the proceeds from each being kept separately. He also dealt in oil and gas leases and residential rental properties. The investments in, and the income from, each of these enterprises went through the hands of and were supposed to be reflected by one set of books kept by James A. King. He was authorized to receive all funds, make deposits, issue checks and generally to handle all matters applicable to the several lines of business. As such employee, King was responsible to Kolp for the faithful performance of all said duties.

Other persons were employed by Kolp to perform certain duties in connection with particular enterprises, but all moneys received, along with all books, accounts, reports and memoranda of business transactions were to be delivered to King. Edwards and Grisham were among those so employed by Kolp.

The defendant corporation guaranteed to Kolp the fidelity of King against any pecuniary loss which he should sustain from any act of fraud, dishonesty, forgery, theft, larceny, embezzlement, misappropriation, wrongful abstraction or willful misapplication of property by King.

Edwards and Grisham were sued jointly with the defendant corporation under allegations of acts of collusion between the three employees, King, Edwards and Grisham, to violate Kolp's property rights.

All defendants pleaded the general issue and the corporation defendant prayed for judgment over against Edwards and Grisham for a sum equal to any amount it should be held liable for, growing out of acts of collusion between the three.

The case was tried to the court without a jury. Judgment was entered for Kolp against each Edwards and Grisham for specified amounts, from which no appeal was taken, and we need give that matter no further attention. There was judgment for Kolp against defendant corporation for the principal sum of $2,238.65, with interest thereon at six per cent per annum from January 1st, 1938. From this judgment the corporation has appealed. We shall refer to Kolp as plaintiff and to Employers' Liability Assurance Corporation, Ltd., as defendant.

This appeal is based upon three assignments of error, substantially as follows: The judgment is contrary to the law and evidence and not supported by either, because (1) the evidence is insufficient to show that Kolp sustained any pecuniary loss, within the terms of the bond, during the period of time involved, (2) there is no evidence to support the finding that King wrongfully abstracted and willfully misappropriated the aggregate amount found by the court, and (3) there is no evidence to support the court's finding that King wrongfully abstracted and willfully misappropriated the sum of $820.79 from the cash account of Kolp.

As disclosed by the assignments of error, the sufficiency of the evidence to support the judgment are the only points of attack and they may all be discussed together.

At the request of defendant, the trial court filed findings of fact and conclusions of law. It was found that defendant's fidelity bond was in effect during the period involved in the suit. That the em-

ployee, James A. King, was one of those whose fidelity was guaranteed to plaintiff; that between May 5th, 1934, and October 31st, 1937, the said James A. King wrongfully abstracted and willfully misappropriated the sum of $2,238.65 belonging to plaintiff; that the several items consisted of shortage in cash, $820.79; shortage in Red Roof Cafe collections, $315; cash collected on wholesale and station accounts not accounted for, $919.88; Flint credit, $15; and merchandise purchased by King for his own use and charged to Kolp, $167.98. There were other findings concerning Edwards and Grisham, not necessary to relate.

The evidence upon which the court made his findings consists in part of an audit of the combined businesses made by C. A. Crafton, a Certified Public Accountant. The audit report comprises about seventy-five pages of the 300 page statement of facts. The remainder of the volume reflects testimony of plaintiff, his employees (other than King) and of Mr. Crafton, the auditor. Even if we were able to analyze an auditor's report, no useful purpose could be served in a case of this character, by a display of that ability. The most complicated phase of the testimony is involved in arriving at the $820.79 item mentioned first in the court's findings. All shortages found by the court are challenged by defendant in its assignments of error, but this item is specially questioned in the third assignment. The auditor, in explaining how he arrived at the figure, took into consideration many of his complicated computations, disclosed by twenty or more pages of schedules and figures. It appears from the testimony that for several years the transactions between the retail and wholesale stations were kept on books that were concealed from the auditor during the time he was compiling audits for years prior to the one now before us. He testified that upon making the audit in controversy he procured those books and gave effect to them in connection with other receipts and disbursements. He said in this connection that the books of the "Station Accounts", independent of all other items, showed receipts of $16,412.07, excepting an item of $4,254.57 cash received by the wholesale business from the retail station. The item represented inter-station transactions between the wholesale and retail stations; the latter would buy products from the former and would pay for them

to the wholesale station; that the books were kept separately at that time; the amount last above mentioned was deposited as receipts by the retail station; when received by the wholesale station from retail station it was again shown to be for deposit by that department. The effect of the court's findings on this point is that the item of $4,254.57, as shown by the auditor's testimony and as reflected by the books as having been twice deposited to Kolp's credit, should be deducted to make the books speak the truth. The evidence supports the court's findings.

Defendant argues that by schedules of the audit copied in its brief, King had received from the several businesses the total sum of $32,487.97, for which he was responsible to Kolp; that from the same schedules he had accounted for $35,894.97, an overage of $3,407.49, and there was no evidence, therefore, to show that plaintiff had sustained any pecuniary loss. To grant that these figures are reflected by the copied schedules, we may not ignore many others which go into the minutest details of many other items, ranging from $0.95 to over $4,000, affecting the whole audit period.

We have no means of knowing just how the trial court made the calculation to arrive at the amount of the shortage from the vast number of figures contained in the audit. We have taken the figures mentioned by defendant as the receipts by King and by adding thereto the amount claimed by plaintiff to have been shown by duplicate deposits, and adding the amount plaintiff had advanced for merchandise for which he received no credit, and adding the amount the court found King had charged plaintiff for merchandise, when it should have been charged to King, and deducting the aggregate from the amount defendant claims King had accounted for, there would be a shortage of approximately $17 more than that found by the court. This more or less inaccurate calculation by us should not be taken, however, in preference to the lesser amount found by the trial court, when he had the assistance and oral explanations by the auditor of the complicated schedules.

The defendant offered no evidence other than that elicited on cross-examination from plaintiff and his witnesses. There is some evidence in the record of King having admitted a shortage in his accounts with plaintiff; the amount was not

disclosed by plaintiff, but indicates that King did not know what amount he had misappropriated. In view of this and the auditor's explanations of the accounts as reflected by his written report, we would be slow to accept defendant's theory that there was no liability and no evidence to support the court's findings of a shortage, because it could be demonstrated by parts of the audit that King had accounted for $3,407.49 more than he had received.

■ It is now a well settled rule of law in this State that when, as in this case, no jury is demanded, the findings of fact by the trial court in controverted issues have the same effect of a jury verdict when one is demanded. 3 Tex.Jur., page 1102, section 771. There are many decisions to the same effect, rendered since the text referred to was published.

■ It is equally well settled that when the jury or the court, in the absence of a jury, decides an issuable fact, and there is substantial evidence in the record to support the finding, the appellate court will not disturb it. Oats v. Dublin National Bank, 127 Tex. 2, 90 S.W.2d 824, and authorities there cited.

There is ample evidence in the record to support the court's findings, and this meets each of the challenges presented in the assignments of error. The assignments must therefore be overruled and the judgment affirmed. It is our order that this be done.