The **HOME INDEMNITY COMPANY,**
Appellant,

v.

E. J. **GONZALEZ, d/b/a Laredo Poultry & Meat Company,** Appellee.

No. 14281.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 21, 1964.

Rehearing Denied Nov. 18, 1964.

J. G. Hornberger, Laredo, and Green, Green & Wiley, San Antonio, for appellant.

Hall, Hall & Juarez, Laredo, for appellee.

POPE, Justice.

Plaintiff, E. J. Gonzalez, recovered a judgment against The Home Indemnity Company for $5,000.00, which was the full amount of a fidelity bond issued to indemnify Gonzalez against losses caused by the fraud or dishonesty of Jessie Santos, who was Gonzalez's partner in the operation of Laredo Poultry & Meat Company. Gonzalez also recovered a nil dicit judgment against Santos for $8,199.00, but he has not appealed. The judgment was rendered upon jury findings that Santos caused losses totaling $8,199.00 by his fraud or dishonesty. We reverse and render the judgment since the proof shows losses in the business, but there is nothing more than conjecture and speculation in support of the necessary implied finding that the losses occurred during the term of the bond, and the finding that they were caused by Santos' fraud or dishonesty.

Gonzalez and Santos began business on December 7, 1961, pursuant to an oral agreement. Gonzalez contributed $10,000.00 in cash to begin the business. On December 30, 1961, they reduced their agreement to a formal written contract, and on that same date The Home Indemnity Company issued its fidelity bond. It protected Gonzalez against losses caused by Santos' larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wilful misapplication, or any other act of fraud or dishonesty after that date. After what appeared to be a good beginning, the company soon was unable to pay its bills and it was closed during April, 1962.

Gonzalez had the burden to prove that the losses occurred during the term of the bond. Royal Indemnity Co. v. North Texas Nat. Bank, Tex.Com.App., 25 S.W. 2d 822, 34 S.W.2d 249; Western Indemnity Co. v. Free and Accepted Masons of Texas, Tex.Com.App., 268 S.W. 728; 45 C.J.S. Insurance, § 803. He had to prove that the losses resulted from Santos' acts of fraud or dishonesty as stated in the bond, and proof of his negligence, carelessness or incompetence does not satisfy this burden. Great American Insurance Co. v. Langdeau, Tex., 379 S.W.2d 62; Village of Plummer v. Anchor Casualty Co., 240 Minn. 355, 61 N.W.2d 225; American Surety Company of New York v. Capitol Building & Loan Ass'n., 97 Colo. 510, 50 P.2d 792. The burden requires proof of more than the fact that the business lost money, Hartford A. & I. Company of Hartford, Conn. v. Hattisburg Hardware Stores, Miss., 49 So.2d 813, 23 A.L.R.2d 1053, or that there was an unexplained loss of funds or merchandise. Salley v. Globe Indemnity Company, 133 S. C. 342, 131 S.E. 616, 43 A.L.R. 971.

The proof does not show that the losses occurred after, instead of before December 30, 1961, the beginning date of the bond. We have no beginning date concerning the accounts of the business until January 24, 1962, seven weeks after the business began. This information consisted only of an itemized inventory which showed merchandise worth $9,628.88 and a list of accounts receivable amounting to $4,155.05, for a total of $13,783.93. Plaintiff had contributed $10,000.00, so he concluded that the

business had made a $3,783.93 profit after seven weeks of business. Gonzalez uses these two itemized lists as the beginning basis to prove the losses.

We do not accept this partial information as proof of even the approximate condition of the business as of January 24th. The lists ignore all expenses during the whole seven-week period between December 7, 1961, and January 24, 1962. They ignore the costs of merchandise and vehicles which had been purchased, rent, storage of merchandise at three different places, salaries for five employees, utilities, interest on notes, gasoline, Santos' drawing account of $80.00, to which he was entitled under his contract, and all other expenses. We have no information about income from sales during that period and do not know whether sales were made for profit or loss. So far as this record shows, the company may already have sustained its losses.

On February 28, 1962, after The Home Indemnity Company had given notice that it intended to cancel its bond, a balance sheet and a profit and loss statement were prepared. This information showed assets in the sum of $10,461.02 and liabilities of $9,370.82, consisting chiefly of accounts payable in the sum of $5,038.37, and notes payable in the amount of $3,736.63. It showed that the company had lost $8,909.80 up to that date, and on the basis of estimates and partial records showed losses from sales alone in the sum of $3,736.63.

The jury found that the business lost $8,199.00 after December 30, 1961, but there is no way for anyone to know this, even approximately. Until January 24, 1962, there was no information as a basis for any starting point. How much loss was attributable to the period prior to December 30 is unknown. Gonzalez, as proof of losses between January 24, 1962, and February 28, 1962, draws our attention to the disparity between the inventories on hand on those two dates. The January inventory showed a worth of $9,628.88, but by February 28 it had shrunk to $2,051.80. He reasons that

the difference in these two items should be reflected in increased bank deposits which were not made. According to the available records and the evidence of plaintiff's accountant, the sales records were incomplete, were evidenced by unnumbered sales tickets, and the tickets bore the name of another company, Laredo Poultry & Meat Company's predecessor. Plaintiff's accountant stated that customers made some payments of their bills to this predecessor firm, but he was unable to determine how much was so paid. The records disclose no system by which anyone could determine how much was lost after December 30, 1961.

■ Santos' fraud or dishonesty was not proved. There was no direct evidence of his fraud or dishonesty during the bond period, but plaintiff relies upon inferences from several facts which we shall mention. Santos was the general manager and was duty-bound to keep accurate records but did not. Plaintiff's bookkeeper and accountant testified that the records were inept and incomplete. These books and records, however, were plaintiff's—not the bonding company's. The difficulty of proof of fraud and dishonesty did not excuse it. Continental Casualty Co. v. First Nat. Bank of Temple, 5 Cir., 116 F.2d 885, 887, 135 A.L.R. 1141. Proof of incompetence is not proof of dishonesty. Irvin Jacobs & Co. v. Fidelity & Deposit Co. of Maryland, 7 Cir., 202 F.2d 794, 37 A.L.R. 889; 9 Appleman, Insurance Law & Practice, § 5667. We do not have proof of alterations or concealment of records as in Employers' Liability Assur. Corp. v. Kolp, Tex.Civ.App., 149 S.W.2d 209, nor proof that Santos personally received the business money and did not turn it over to the business, as in National Surety Co. v. McCutcheon, Tex.Civ.App., 270 S.W. 1062. Santos admitted that some undetermined amount of money was not actually deposited in the bank because the business was more or less run out of the cash register. As money was collected, bills were paid in cash or by endorsing checks over to creditors. The proof fails to show that Santos was the only one who handled

these transactions. There were five employees who were in a position to take company funds while Santos was traveling for the business or was gone. 9 Appleman, Insurance Law & Practice, § 5669. Gonzalez argues that Santos admitted taking money, but the record shows only that Santos testified, "Well, I don't know, I don't know anything that happened. I spent some of the money but not all of it." Santos, as general manager, actually spent most of it, but this does not prove he spent it dishonestly. He consistently denied any wrongdoing and his statement that he "spent" it does not mean, as argued, that he "took" it. By his contract, he was entitled to draw $80.00 a week, and to share in seventy per cent of the profits after the first month, and sixty per cent thereafter. Santos, prior to the beginning date of the bond, used $300.00 to buy a cantina. This was known to Gonzalez at the time he made his written contract on December 30, and was before the date of the bond. This is immaterial to the liability of the bonding company and is the only instance of proof of misapplication of money in an amount which is determinable with any fair degree of certainty. The fact that Santos failed to appear at the trial is also taken as an inference against his honesty. Santos testified by deposition and he was fully examined and cross-examined. The whole problem in this case is summed up rather well by Gonzalez's accountant, who stated that by taking an estimated mark-up and using it on an estimated total stock of merchandise, he could estimate that the business lost $8,500.00. That is about as close as we can come to any method to estimate the losses. The accountant stated there were several explanations for the losses. The merchandise could have been sold for less than cost; there may have been too many employees. The accountant's concluding remark in a written report was "the operation was very prone to the misapplication of goods and monies by anybody." This kind of evidence is supposition and is too speculative to prove dishonesty in that or any other amount.

This case is governed by the principles expressed in Continental Casualty Co. v. First National Bank of Temple, supra, which states: "Before the plaintiff can recover any part of its claim, it is necessary to show that a direct loss was actually sustained by the dishonest acts of its employees, since the bond sued on became effective and it should not leave that question in a condition of mere speculation. If it has permitted records to become lost or destroyed, or finds it impossible to make the proof for other reasons, then that is not the fault of the defendant. The bank still carries the burden of establishing its loss, within the terms of the bond, by a fair preponderance of the evidence." Likewise, Cobb v. American Bonding Co. of Baltimore, 118 F.2d 643, is in point. "Under the bookkeeping system used by the plaintiffs shortages would be reflected by any number of things other than dishonest conduct of employees. * * * Viewing all the evidence in the light most favorable to the plaintiffs it, at most, creates no more than a surmise or suspicion that some of the shortage reflected by the inventories might have been due to dishonesty on the part of an employee or employees. Verdicts may not rest upon guess or conjecture, and where, as here, the probative force of all the evidence of the plaintiff does not go beyond the point of creating a mere surmise or suspicion, it becomes the duty of the trial court to instruct a verdict for the defendant."

Plaintiff has failed to prove that the losses occurred during the effective period of the bond, and that they were caused by Santos, the only one whose fidelity was guaranteed. That Santos was guilty of fraud and dishonesty is indicated by nothing more than speculation and suspicion which is no evidence. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

The judgment is reversed and here rendered that appellee take nothing against appellant. That part of the judgment not appealed from is affirmed.

On Motion for Rehearing.

Plaintiff, Gonzalez, by his motion for rehearing, properly objects to our comments about Santos' admissions that he took or spent some of the money, as well as his failure to appear and defend himself against the misapplication of the funds. Plaintiff correctly argues that these were matters for the jury to interpret, and that we can not substitute our evaluation for the jury's. Plaintiff also calls our attention to the fact that Santos used the $300.00 to buy a cantina in December, before the date of the bond issued by defendant, but that plaintiff did not discover it until after he and Santos made their contract on December 30. We make these factual corrections, but the record still fails to show, in dollars and cents, how much, if any, Gonzalez misapplied.

The motion for rehearing is overruled.