COLVIN v. CHADWICK et al.   (No. 11669.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 15, 1927. Rehearing Denied Feb. 19, 1927.)

**1. Trial ⬅⮞177—Refusal to permit defendant to introduce testimony after both sides moved for peremptory instruction was error.**

In action for real estate brokers' commissions, where, after plaintiffs rested,. both parties asked for peremptory instruction, refusal to permit defendant to introduce testimony thereafter was error.

**2. Trial ⬅⮞156(3)—"Demurrer to evidence" admits every fact and conclusion which evidence tends to prove.**

"Demurrer to evidence" admits every fact and conclusion which evidence tends to prove, that is, which jury could legally infer therefrom.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Demurrer to Evidence.]

On Motion for Rehearing.

**3. Brokers ⬅⮞86(7)—Evidence held not to bar broker from recovery of commissions for exchange of real estate because representing both parties.**

In action by broker for commissions for exchange of real estate, in which evidence tended to show that broker was representing both parties with consent of defendant, evidence as to broker's negotiations *held* not to show lack of good faith toward defendant, preventing recovery.

**4. Brokers ⬅⮞65(4)—Real estate broker may represent both parties, with their consent.**

Real estate broker may represent both parties, with their knowledge and consent.

Appeal from Tarrant County Court; H. O. Gossett, Judge.

Action by K. U. Chadwick and another against O. V. Colvin to recover a real estate agent's commission. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Bryan, Stone, Wade & Agerton and Oliver W. Fannin, all of Fort Worth, for appellant.

Hyer & Christian, of Fort Worth, for appellees.

BUCK, J. [1] This was a suit by K. U. Chadwick and Mark Raley, doing business as realtors or real estate brokers, against O. V. Colvin, for a commission for the alleged sale or exchange of a house and lot in Fort Worth. After the plaintiffs had testified at length, the plaintiffs rested. Thereupon defendant filed a motion for a peremptory instruction, and the plaintiffs joined issue, and submitted a motion for a peremptory instruction for plaintiffs. In plaintiffs' motion it was stated that defendant had requested the case to be taken from the jury and instruct

a verdict for defendant, but defendant's motion was simply a request for a peremptory instruction. The court gave plaintiffs' motion, and instructed the jury to find for plaintiffs in the sum of $162.50—2½ per cent. commission on the alleged value of defendant's property. From a judgment entered upon this verdict, the defendant has appealed.

Opinion.

The one question to be decided on this appeal is: Did the trial court err in instructing a verdict for plaintiffs and in refusing to permit defendant to introduce testimony after the two motions for peremptory instructions had been made?

In Manska v. San Benito Land Co., by the Iowa Supreme Court, 191 Iowa, 1284, 184 N. W. 345, 18 A. L. R. 1430, and in annotations thereto, the question is discussed as to whether a request by both parties for a directed verdict constitutes a waiver of submission to the jury of the facts. The majority rule holds that it does, and the federal courts and the courts of Alabama, Arkansas, Colorado, Indiana, New York, and a number of other states so hold. The minority rule holds that a request for a directed verdict by both parties is not a waiver of submission of the case to the jury, as held by the Supreme Court of Illinois, Iowa, Minnesota, New Jersey, Oklahoma, Tennessee, and Vermont. No cases from Texas are given in the annotation, but by reference to Texas decision we conclude that our state has followed the minority rule in Eberstadt v. State, 92 Tex. 94, 45 S. W. 1007, where, in an opinion by Judge Brown, the Supreme Court said:

"In answer to the second question, we say that the court should not have treated the motion made by the defendants to peremptorily instruct the jury to find a verdict in their favor as a demurrer to the evidence.

"The office of a demurrer to the evidence is to take the case from the jury, and submit it to the court, upon the admission that the evidence introduced is true, and thus to invoke the judgment of the court upon the sufficiency of that evidence. The jury is discharged from the further consideration of the case except that in actions for unliquidated damages the court must submit the question of the amount of recovery to the jury. Railway Co. v. Templeton, 87 Tex. 47, 26 S. W. 1066.

"The effect of the motion made by the defendants to instruct the jury to find for them has practically the same effect as a demurrer to the evidence in calling for the opinion of the court on the legal sufficiency of the proof, but it does not have the effect to withdraw the case from the jury. If a motion be overruled, the trial must proceed as if it had not been made; and the court can not, because the motion has been overruled, instruct the jury to find for the plaintiff, upon the ground that the motion admitted the truth of the evidence adduced. 2 Thomp. Trials, § 2270, p. 1624; Harris v. Woody, 9 Mo. 113. The difference between the demurrer to the evidence and the motion

to instruct a verdict for the defendant is technical, it is true, but it is still a practical difference, in this: That the defendant does not choose to withdraw his case from the jury, and rely upon the testimony already introduced, but exercises his option of calling for the judgment of the court upon the strength of the plaintiff's case, with the privilege, in case the decision is against him, of proceeding to develop his defense to the plaintiff's action. Instead of moving the court to instruct the jury, the defendants might have presented a written instruction to that effect, and, it being refused, could have proceeded to introduce their testimony."

It will be seen from the above quotation that the Supreme Court recognized a distinction between a demurrer to the evidence and a joinder of issues on request for an instructed verdict. The court held that the effect of the motion made by the defendants to instruct the jury to find for them has practically the same effect as a demurrer to the evidence in calling for the opinion of the court on the legal sufficiency of the proof, but it does not have the effect to withdraw the case from the jury; that, if a motion for a verdict be overruled, the case must proceed as if it had not been made; that the difference between the demurrer to the evidence and the motion to instruct a verdict for the defendant is technical, but it is still a practical difference, in this, that the defendant does not choose to withdraw his case from the jury and rely upon the testimony already introduced, but exercises his option in calling for the judgment of the court, upon the strength of the plaintiff's case, with the privilege, in case the decision is against him, of proceeding to develop his defense to the plaintiff's action. The Eberstadt Case has been followed by a number of decisions, some of which are: Woldert Gro. Co. v. Veltman (Tex. Civ. App.) 83 S. W. 224; Diamond Rubber Co. v. Wernicke (Tex. Civ. App.) 148 S. W. 160; Ward v. Walker, 159 S. W. 320, by the Galveston Court of Civil Appeals, writ of error refused; Co-Operative Furniture Co. v. Southern Surety Co., 264 S. W. 201, by the Beaumont Court of Civil Appeals; Hook v. Payne, 211 S. W. 280, by the San Antonio Court of Civil Appeals; Proctor v. Garman, 203 Mo. App. 106, 218 S. W. 910.

Appellees rely on such cases as Tiblier v. Perez, 277 S. W. 189, by the San Antonio Court of Civil Appeals, and Jeffers v. Brewer, 266 S. W. 1110, also by the San Antonio Court of Civil Appeals. In Jeffers v. Brewer, supra, the case was submitted to a jury upon special issues, and upon the answers thereto the court returned judgment. Certainly in this case there was no denial of the right of trial by a jury. We presume the case was cited merely because of certain expressions therein, to the effect that, where both parties file requests in writing for an instructed verdict, such action may and does indicate that each side approves the testimony as a finding in their favor of the sufficiency of the facts for that purpose. In Tiblier v. Perez, supra, the case was tried with a jury, and, after all the evidence was in, both parties requested an instructed verdict in their behalf. The court instructed the verdict for the plaintiff. The court said, in regard to the two motions for an instructed verdict:

"This, of course, must be treated on the part of each side as a waiver of the jury and an approval of the testimony by each party in their favor, thus electing to take the action of the court as final, and cannot be heard, either one of them, to complain of the court's action resolving any issue against them"—citing cases.

In the cited case no issue was requested by appellant to be submitted to the jury. We do not think that this case in any way conflicts with Eberstadt v. State, supra.

[2] If the pleadings filed by appellant had been technical demurrers to the evidence, a different situation would have been presented. A demurrer to the evidence admits every fact and conclusion that the evidence tends to prove; that is, which a jury could legally infer from the evidence. Combination Fountain Co. v. Rogers (Tex. Civ. App.) 186 S. W. 407. It has been held that demurrers to the evidence are practically eliminated from the practice of Texas courts, a motion to direct a verdict taking their place (Woldert Gro. Co. v. Veltman, supra; T. & P. Ry. Co. v. Murphy, 46 Tex. 356, 367, 26 Am. Rep. 272); that the effect of entertainment of a demurrer to the evidence is to suppress the truth. However, in a number of states the practice of permitting a demurrer to the evidence is invoked, and in such states has been held not to conflict with the constitutional guaranty of a trial by jury. 26 R. C. L. § 68, p. 1060. But there is no technical demurrer to the evidence in this case.

For the reasons stated, the judgment below is reversed, and the cause is remanded.

### On Motion for Rehearing.

[3] Appellant urges that we should have reversed the judgment below and here rendered judgment for him, because certain evidence tends to show that the appellee in talking to Mr. Estes, the party with whom appellee claims he made the deal for appellant, made use of certain statements. The testimony is as follows, appellee testifying:

"In my conversation with Mr. Estes I told him that I might get him $6,500 to boot, I thought, and maybe $7,000, but I doubted it. It was Mrs. Tinsley who made the proposition of $6,500 or $7,000 to boot between the two places. I told Mr. Estes that I could get him $6,500 or $7,000 although Mr. Colvin had instructed me to try to trade for $5,000 because he told me that he would look at the place for $6,500. * * *

"I did not make that proposition of $5,000 to boot. I said, 'I think I can get you $6,500 to boot, or maybe $7,000.' Although he (Col-

vin) had instructed me to do that, I tried to make a trade that would be more advantageous to the buyer. * * *

"That offer of Mr. Colvin's of $5,000 to boot was subject to his approval of the inside of the house, the same as the $6,500 offer. He says, 'I believe he will do that.' When I first called Estes, I told him that I thought I could get him $6,500 or $7,000, but I didn't think I could get the $7,000, but that I would if I could. I considered the property very cheap at that price."

Appellant urges that the law requires the utmost good faith on the part of agent to represent the best interest of his principal, and, where it is shown that he failed so to do, he cannot recover for his services. He cites such cases as Alford v. Creagh, by the Court of Appeals of Alabama, 7 Ala. App. 358, 62 So. 254, where the court says:

"The law requires that a real estate agent, employed to sell land, must act in entire good faith and in the interest of his employer. Henderson v. Vincent, 84 Ala. 101, 4 So. 180. To this end he must exact from the purchaser the price, the terms, and conditions of sale which his employer has fixed. 23 Am. & Eng. Ency. Law (2d Ed.) p. 902. If he fails to do this, but induces the prospective purchaser to believe that the property can be bought for less, he fails to discharge that duty to his principal that good faith demands. Such conduct on the broker's part is well calculated to lead the purchaser to stand out and thereby either force from the seller a lower price than that fixed or delay the sale, even if he finally buys at the price fixed, both detrimental to the interest of the seller."

He also cites Surety Co. v. McCutcheon, 270 S. W. 1062, in which Chief Justice Conner of this court says:

" 'The relation of principal and agent is fiduciary, requiring the most perfect loyalty and the utmost good faith, the strictest integrity, and the fairest dealing on the part of the agent to his principal.' "

[4] We recognize the rule to be as laid down in these two cases, but for reasons hereinafter given we do not think the testimony of Chadwick, herein quoted, necessarily debars him from a recovery In the first place, there is evidence tending to show that Chadwick was representing both the buyer and seller in the negotiations, and that such fact was known to Colvin, and impliedly, at least, with his consent. The evidence further shows a Mrs. Tinsley had owned the property subsequently purchased by Colvin, and she had indicated that she might take $7,000 difference between her property and certain property owned by Colvin, and Colvin, upon such fact being reported to him, said he might give $6,500 "to boot." Subsequently Mrs. Tinsley sold the place to Estes, and Chadwick explains his reason for saying to Estes that he thought he could get a $6,500 to boot offer, and maybe a $7,000. He

testified he knew what Estes had paid for the place, and he felt he would expect to make something on the deal before he would trade with appellant. Under these circumstances, we cannot say as a matter of law that appellee as agent showed such a lack of good faith towards appellant as would debar him from a recovery. With the knowledge and consent of both parties to a deal, a realtor or broker may represent both parties, and, as before stated, there is some evidence in the record tending to show that there was a dual agency on the part of appellee which was known to appellant.

The motion for rehearing is overruled.