Lloyd W. Davidson, State's Atty., of Austin, for the State.

MORROW, P. J.

The offense is the failure to support a minor child; penalty assessed at confinement in the county jail for a period of 75 days and a fine of $25.

The indictment charges a felony as defined by article 602, P. C. 1925, as amended by chapter 195, Acts of 41st Legislature (1929) Regular Session (Vernon's Ann. P. C. art. 602). As the offense is defined by article 602, supra, it is a misdemeanor. The amendment attempts to make it a felony. It was recently decided by this court in Ex parte Bill Heartsill, 38 S.W.(2d) 803, that the amendment was void in failing to comply with the constitutional provision touching the caption of the bill as set forth in article 3, § 35, Const. of Texas. In the decision mentioned, article 602, supra, as it appears in the Penal Code 1925, was held not affected by the passage of chapter 195, supra. The offense being a misdemeanor, the trial would ordinarily be had in the county court, unless it came within one of the exceptions named in article 5, § 16, and article 5, § 22, of the Constitution. Whether the facts bring the case within the jurisdiction of the district court is not disclosed by the record. However, it was treated as a felony, and the appellant was convicted of a felony, as defined by chapter 195, supra, which statute was void in failing to comply with the constitutional provisions.

The judgment is reversed, and the cause remanded.

**HUNTER v. GRANT.**

No. 12489.

Court of Civil Appeals of Texas. Fort Worth.

June 13, 1931.

Rehearing Denied July 11, 1931.

Taylor, Muse & Taylor, of Wichita Falls, and E. E. Fischer, of Tyler, for plaintiff in error.

McDonald & Anderson, of Wichita Falls, for defendant in error.

BUCK, J.

Alton V. Grant sued T. F. Hunter for a balance alleged to be due the plaintiff on a sale of certain leases by the plaintiff to defendant. Plaintiff alleged that he sold the defendant a certain described 20 acres of land, situated in Cooke county, and the defendant agreed to pay him $1,500 in cash, and executed an obligation for $1,500, payable in 30 days, out of the first oil produced from said tract of land. That the defendant

has paid on said total indebtedness the sum of $2,125, leaving a balance of $875 due and unpaid.

The defendant filed an answer, consisting of a general demurrer and a general denial, and further pleaded that plaintiff on or about December 14, 1929, represented to defendant that he owned the oil and gas lease, situated in Cooke and Montague counties, upon 41 acres of land; that said 41 acres was the only acreage he was interested in in the immediate vicinity of said 41 acres; that plaintiff had contracted to drill a well upon said 41 acres and sought to negotiate with defendant, whereby defendant would furnish the money, or the greater part of the money, for the drilling of the well. That the plaintiff and defendant entered into a contract, part of which was in writing and part of which was verbal, whereby defendant in consideration of an undivided one-half interest in and to the original oil and gas lease affecting said 41 acres and of the services of plaintiff in procuring the oil and gas leases on 100 acres adjacent to said 41 acres and to the north, and that plaintiff, in negotiating the purchase of said 100 acres, agreed to act as defendant's agent, without expense of any character to defendant, but to purchase said 100 acres at the net price paid to the owners thereof. That later, plaintiff represented to defendant that he had been in conference with each of the four owners of said acreage, to wit, H. D. Fields, Ralph Donnell, J. T. Crump, and J. L. Huey, and that the lowest price he could purchase said land for was $4,500. That in fact plaintiff purchased said 100 acres for $3,600, and secretly and fraudulently retained for himself a commission and profit, contrary to the terms of his agreement, in the sum of $900. That the acts of omission and commission on the part of plaintiff, as stated above, was a fraud on the defendant, and the $900 obtained as a result thereof was fraudulently obtained, and defendant is entitled to judgment for its return and repayment.

The cause came on for trial before a jury, and the testimony of both parties was introduced, and both the plaintiff and defendant asked for peremptory instruction. The defendant also asked, in case his peremptory instruction was not given, for the submission of certain issues, hereinafter to be noticed. The trial court granted plaintiff's motion for peremptory instruction, and instructed the jury to find for the plaintiff in the sum of $875, and against the defendant on his claim for credit for $875. From this judgment, the defendant has appealed.

### Opinion.

While neither appellant nor appellee discusses the rule hereinafter noted, yet counsel for appellant spoke, in oral argument, of the facts that both parties had asked for a peremptory instruction. Therefore, we believe that we ought to discuss briefly the duty of the trial court in such a case.

In Manska v. San Benito Land Co., by the Iowa Supreme Court, 191 Iowa, 1284, 184 N. W. 345, 18 A. L. R. 1430, the question was discussed as to whether a request by both parties for a directed verdict constitutes a waiver of submission to the jury of the facts. The majority rule holds that it does, and the federal courts and the courts of Alabama, Arkansas, Colorado, Indiana, New York, and a number of other states so hold. The minority rule holds that a request for a directed verdict by both parties is not a waiver of submission of the case to the jury, as held by the Supreme Court of Illinois, Iowa, Minnesota, New Jersey, Oklahoma, Tennessee, and Vermont. It is our opinion that the Texas decisions are all in line with the minority rule. In the case of Eberstadt v. State, 92 Tex. 94, 45 S. W. 1007, 1008, Judge Brown, of the Texas Supreme Court, said: "The effect of the motion made by the defendants to instruct the jury to find for them has practically the same effect as a demurrer to the evidence in calling for the opinion of the court on the legal sufficiency of the proof, but it does not have the effect to withdraw the case from the jury. If a motion be overruled, the trial must proceed as if it had not been made; and the court cannot, because the motion has been overruled, instruct the jury to find for the plaintiff, upon the ground that the motion admitted the truth of the evidence adduced. * * * The difference between the demurrer to the evidence and the motion to instruct a verdict for the defendant is technical, it is true, but it is still a practical difference, in this: That the defendant does not choose to withdraw his case from the jury, and rely upon the testimony already introduced, but exercises his option of calling for the judgment of the court upon the strength of the plaintiff's case, with the privilege, in case the decision is against him, of proceeding to develop his defense to the plaintiff's action. Instead of moving the court to instruct the jury, the defendants might have presented a written instruction to that effect, and, it being refused, could have proceeded to introduce their testimony."

The cases of Tiblier v. Perez, 277 S. W. 189, 190, and Jeffers v. Brewer, 266 S. W. 1110, both by the San Antonio Court of Civil Appeals, hold: "This, of course, must be treated on the part of each side as a waiver of the jury and an approval of the testimony by each party in their favor, thus electing to take the action of the court as final, and cannot be heard, either one of them, to complain of the court's action resolving any issue against them."

In Colvin v. Chadwick, 291 S. W. 639, this court, in an opinion by the writer, disagreed

with the holding of the San Antonio court, and followed the minority rule.

In Morriss v. Knepper, 10 S.W.(2d) 1012, the El Paso Court of Civil Appeals, in an opinion by Judge Higgins, agreed with our holding in Colvin v. Chadwick, supra, in line with a number of other cases cited in that opinion.

In Long Bell Lumber Co. v. Futch, 20 S.W. (2d) 1076, 1080, the Amarillo Court of Civil Appeals, after mentioning two cases of the San Antonio Court of Civil Appeals holding to the contrary, said: "Our views are in accord with those expressed in the cases of Citizens' National Bank of Brownwood v. Texas Compress Co. (Tex. Civ. App.) 294 S. W. 331, writ of error refused; Colvin v. Chadwick et al. (Tex. Civ. App.) 291 S. W. 639; Miller-Vidor Lumber Co. v. Schreiber et al. (Tex. Civ. App.) 298 S. W. 154, writ of error refused."

Therefore, we conclude that the submission of the peremptory instruction by both plaintiff and defendant did not preclude a trial by jury, if the facts adduced on the trial showed a conflict.

The trial court instructed a verdict for defendant in the following words: "In this case the court instructs the jury to return a verdict based upon the facts and the law as they appear to the court."

The defendant requested four special issues as follows:

"1. Was the plaintiff, A. V. Grant, acting as the agent of the defendant, T. F. Hunter, at the time he procured and purchased the 100 acre lease from H. D. Fields, R. W. Donnell, J. T. Crump and J. L. Huey on the 12th day of December, 1929?

"2. Did the plaintiff, A. V. Grant, act in good faith, strict integrity and fair dealings with the defendant, T. F. Hunter, in notifying him of the facts surrounding the purchase of said lease and especially the amount that he paid the owners for the same?

"3. Did the plaintiff agree with the defendant that he would procure the 100 acre lease from H. D. Fields, R. W. Donnell, J. T. Crump and J. L. Huey on the 12th day of December, 1929, and that the defendant, T. F. Hunter, was to have said lease for the net price paid for the same?

"4. Did the plaintiff, A. V. Grant, agree with the defendant, T. F. Hunter, that he would procure the 100 acre lease in question without any consideration or compensation to be paid to him for procuring the same?"

All of these special issues, so submitted by the defendant, were refused.

█ There is sufficient evidence to show that A. V. Grant was the agent and acting for defendant in the purchase of the 100 acres in question, and that Grant agreed that he would turn over the leases so secured at just the price paid the lessor, without a commission or anything paid to Grant as an inducement. There is evidence tending to show that Grant, acting as such agent of Hunter, told some of the lessors, at least, to charge $60 an acre. He had already secured a lease to 20 acres from the lessors, without paying anything for the same, and he divided the money paid by Hunter with said lessors. Plaintiff in his first supplemental original petition demurred to defendant's answer, because it appeared therefrom that defendant was attempting to set up as a defense to plaintiff's cause of action, which was a liquidated demand, an unliquidated and uncertain account. The trial court did not pass upon this demurrer, and is presumed to have overruled the same, and we doubt if the recovery which defendant sought to offset against plaintiff's cause of action was an unliquidated demand, in that said amount was paid the plaintiff below in addition to what the other lessors received. There is evidence to show that Grant had the lease, theretofore given him by the owners of the leasehold estate, in escrow, and that he was to receive a deed and assignment to said part of the leasehold estate when it appeared that the defendant below, or the plaintiff, or some one secured by him, was ready and willing to drill a well on the land. There is evidence to support the conclusion that Grant did not want Hunter to know that he had received any part of the purchase price, and he instructed one of the owners of the land to tear up and destroy the assignment in the bank in escrow for his benefit, and instructed them not to tell Hunter anything about this escrow agreement. Therefore, we conclude that the defendant had a right to have the jury pass on the good faith of Grant, and determine whether or not Grant had acted, in the purchase of the leases, fairly and justly towards Hunter.

The evidence further shows that Hunter was not in a position to tender back to the landowners the assignment which had been executed by them to him, and to demand the return of his money, in that Grant had conveyed the leases to a corporation, and had been paid therefor, in which corporation he was a half owner.

In 2 Corpus Juris, page 705, § 362, it is said: "As a general rule an agent must not, without his principal's full knowledge and consent, purchase for himself property which he is employed to purchase for his principal. If he does so it is a breach of faith and he will be regarded as holding the property so purchased, although purchased in his own name, or its proceeds, for his principal, although he contributes his own funds to the purchase. * * * But the rule does not apply where the purchase is made in good faith after the agency has been terminated, or where the agent has purchased for himself at a higher price after unsuccessful efforts

to purchase for the principal at the price limited by the latter. Nor does it preclude the agent from purchasing property of the same class for himself at the same time that he is purchasing for his principal, where he does so with the principal's full knowledge and consent, or where the agency is not exclusive."

In section 361, the same authority says: "The distinction has been made that if an agent sells to his principal property which he owned or had contracted for before becoming agent, and the principal chooses to keep the property, he cannot compel the agent to refund the advance paid to him in excess of what the property cost him; but that if the agent acquires the property for the express purpose of selling it to his principal at an advance, the principal may retain the property and compel the agent to account for the excess, and that it is immaterial to plaintiff's recovery in such case whether the agent contracted for the land before or after the principal agreed to purchase it."

The evidence further showed that before this assignment was put up in escrow for Grant, Grant knew that Hunter would not drill the well unless he acquired a lease on the 100 acres adjacent to or surrounding the place where the well was being drilled.

We conclude that the trial court erred in instructing a verdict for plaintiff below, and in not permitting the jury to pass on the questions, the determination of which was involved in the issues sought by defendant to have submitted to the jury. We think the issues tendered involved facts about which there was a conflict in the testimony.

For the reasons stated, the judgment below is reversed, and the cause is remanded.