## E. G. SENTER, Jr., Appellant, v. DIXIE MOTOR COACH CORPORATION, Appellee.

### No. 11360.

Court of Civil Appeals of Texas. Dallas.

Nov. 25, 1933.

Second Rehearing Denied Feb. 16, 1934.

E. G. Senter, of Dallas, for appellant.

Seay, Malone & Lipscomb, of Dallas, and Raymond E. Buck, of Fort Worth, for appellee.

PER CURIAM.

Second application for rehearing denied.

LOONEY, Justice (dissenting).

After further consideration, I am convinced that the evidence raised an issue as to whether or not the fire damage to the building could have been repaired "forthwith," within the meaning of the lease contract, and, in view of appellee's unequivocal renunciation of the lease contract, that appellant was not required to repair the building and make tender of same to appellee, as a condition precedent to the right to maintain the suit; furthermore, I am of opinion that the failure of appellant to object to the court's charge, directing the verdict, and his failure to request the submission of special issues, neither waived the vice in the court's charge nor abandoned any controverted issue.

The authorities are in accord in holding that statutes, providing that defects in a charge not objected to are waived, and that special issues not requested are abandoned, are not applicable where a peremptory instruction is given. It is also settled that a party waives nothing by moving for an instructed verdict, and, if the motion be denied, he stands in the same attitude as regards the future progress of the trial as if the motion had not been made. See Eberstadt v. State, 92 Tex. 94, 45 S. W. 1007; Morriss v. Knepper (Tex. Civ. App.) 10 S.W.(2d) 1012; Miller-Vidor Lumber Co. v. Schreiber (Tex. Civ. App.) 298 S. W. 154; Colvin v. Chadwick (Tex. Civ. App.) 291 S. W. 639; Bell v. Ramirez (Tex. Civ. App.) 299 S. W. 655; Citizens' Nat. Bank v. Texas Compress Co. (Tex. Civ. App.) 294 S. W. 331; Walker v. Haley, 110 Tex. 50, 214 S. W. 295; Hill of Stampfli (Tex. Civ. App.) 284 S. W. 237; Hunter v. Grant (Tex. Civ. App.) 41 S.W.(2d) 245. In Tiblier v. Perez (Tex. Civ. App.) 277 S. W. 189, 190, the court said: "An instructed verdict when there is sufficient evidence to go to the jury constitutes fundamental error. There are many decisions to that effect; and for that reason an exception to the charge of the court is not necessary."

In view of these authorities, I do not think appellant was required to object to the charge directing verdict for appellee, nor did he, by failing to request submissions, abandon any controverted issue. The action of the court, in directing the verdict, if error, is fundamental in nature, and can be raised here even without assignment or proposition.

So this brings us back to the original question; i. e., does the record contain any evi-

dence in support of the idea that the fire damage to the building could have been repaired "forthwith" and the building made fit for occupancy? I think so, and will refer to evidence that, in my opinion, required its submission and forbade the instructed verdict.

It will be borne in mind that the building was a mere shell, composed of four walls, concrete floor, and a roof, and was used by appellee as a garage and depot. Mr. Peterman, an architect, construction engineer, and contractor of thirty-one years' experience, testified that, at the instance of Mr. Senter, he examined the building shortly after the fire; that the needed repairs were a roof, the restoration of walls where bricks had fallen down, and electrical wiring; that the walls were in good shape, aside from places where bricks had fallen off; that he estimated the repair work could have been accomplished in about six days, and, by rushing the job, in about five days. E. G. Senter, Jr., appellant, civil engineer, captain of engineering in the regular army during the War, testified that immediately after the fire he went upon the premises, found the roof of the building destroyed but the walls intact, with the exception of some bricks knocked out where ceiling joists and rafters had broken loose; that it would have taken about five days to restore the roof, including practically everything that was needed to be done to restore the building as formerly.

Mr. Robbins, assistant inspector of buildings for the city, testified in substance that the roof would have to be restored with either wood or steel joists, metal laths, and plaster on ceiling; that the rear of the building would have to be inclosed with a 13-inch brick wall; that the other walls were in condition, as formerly, with the exception of rough sections, where bricks had broken loose.

Mr. Laird, owner of the adjoining building, to which the fire extended, also under lease to appellee for a common purpose, testified that on the morning after the fire he went upon the premises, met Mr. Barrett, appellee's manager, and assured him that repairs could be made very soon, that Mr. Barrett replied, "Yes, it wouldn't take any time much." Witness further said that he took with him to the premises Mr. J. O. Gill, an architect and contractor, introduced him to Mr. Barrett, that Gill remarked it would take but a short time to repair the building, witness saying that he wanted to begin the repair work just as quickly as possible, that Mr. Gill would make the repairs, and that Mr. Barrett offered no objection.

This evidence, in my opinion, required submission of the issue as to whether the building could have been "forthwith" repaired and rendered fit for occupancy, within the meaning of the lease contract, and that the court erred in assuming, as a matter of law, that such could not have been done.

In Gleghorn v. Russell et ux., 62 S.W.(2d) 285, this court announced the well-recognized doctrine (citing authorities) that "a trial court should never direct a verdict unless the evidence as a matter of law will admit of no other conclusion."

Was appellant, under the circumstances, required to show, as a condition precedent to the maintenance of the suit for breach of the lease contract, that the building had been repaired and tendered to appellant in its restored condition? I do not think so. The day following the fire (April 5, 1930) appellee, through its attorney, Mr. Buck, wrote appellant as follows: "That the building was destroyed by fire at about 9:30 P. M. on the date of April 4, 1930. Representatives of the Company (appellee) have inspected the premises and it is unquestionable that it is unfit for occupancy. Under the terms of our lease with you, paragraph fifth provides as follows (quoting). Under this provision of the lease and the damage done to the premises, we deem our lease contract with you to be terminated. Rent in the sum of One Hundred Eighty (180) Dollars on each of these leases (Senter and Laird leases), or the total of Three Hundred Sixty (360) Dollars, was paid in advance for the month of April. We are therefore entitled to a return of the rent, pro-rated to the time of the fire, etc." On April 7, 1930, E. G. Senter, Sr., attorney for appellant, replying to the above, stated among other things, that "On behalf of the owners of the premises referred to, I beg to advise that arrangements have already been made to repair all damage forthwith, and that in a few days this work will be completed and the premises ready for the Dixie Motor Coach Corporation, etc." Again, on April 8, 1930, attorney for appellant notified attorney for appellee, in writing (copy to appellee), that the owners, of the two properties under lease, were ready, and had been since April 5th, to proceed with the repairs, but could not go on the premises without authority from appellee; that the débris could not be cleared away until the removal of appellee's cars and other property, asking to be advised as to the wishes of appellee, stating that the owners held themselves in readiness to do all things required by the terms of the lease contract, concluding with this language, "as we have already advised you, will insist upon your continued performance of same." Under date of April 11th, Mr. Buck, for his client, wrote appellant's attorney in part as follows: "Dear Sir: We have your letters of April 7th, and 8th, respectively, in connection with the premises at 605–11 Jackson Street, Dallas, Texas, which was destroyed by fire on the night of April 4th, 1930. We have taken this matter up with our client, and have given careful consideration to the provision Fifth in

the lease contained, and it is concluded that we have the right to consider these leases terminated, as we have heretofore advised you, and now advise you that we will stand by our decision in this respect, and consider the leases terminated by the occurrence of the fire. The premises are wholly unfit for occupancy, and this fact we do not believe can be disputed, in view of the apparent and obvious condition of the premises. We have heretofore requested the return of our pro-rata rental for the month of April, paid in advance, and we herewith renew this request."

This evidence conclusively shows that, based upon its insistence that the building had been destroyed, thus terminating the tenancy, appellee unequivocally abandoned the lease contract. In view of this situation, appellant could not have repaired the building with any reasonable expectation that it would be again occupied by appellee under the lease contract. The renunciation of the lease by appellee was positive, going even to the extent of demanding refund of rents from the date of the fire. Appellant was, in my opinion, fully justified in treating the contract as abandoned and in instituting the suit for the recovery of damages. The following authorities are in point: Young v. Watson (Tex. Civ. App.) 140 S. W. 840; Burks v. Neutzler (Tex. Com. App.) 2 S. W.(2d) 416; Dockery v. Durham (Tex. Civ. App.) 3 S.W.(2d) 514; Reitzer v. Medlake Development Co. (Tex. Civ. App.) 27 S.W.(2d) 563; Weston v. Meeker (Tex. Civ. App.) 109 S. W. 461, 466; Moore v. Jenkins, 109 Tex. 461, 211 S. W. 975, 976; Pollack v. Pollack (Tex. Com. App.) 46 S.W.(2d) 292. In Moore v. Jenkins, 109 Tex. 461, 211 S. W. 975, 976, the Supreme Court, through Justice Greenwood, used the following pertinent language: "The effect of an express and unconditional renunciation of his contract, by defendant in error, was to entitle plaintiffs in error to treat the contract as terminated if they so desired. The law on this subject was plainly stated by Judge Brown as follows: 'The intention to abandon the contract at some future date is no breach of it, but, when that intention is declared in positive terms and unconditionally, it has the effect, in so far as the promisor is able to do so, to repudiate the contract itself and to terminate the contractual relations between the parties. This affords to the other party the opportunity to accept the declarations, if he chooses to do so, and thus make effective the declarations of intention not to perform, rendering the contract thereby one that is broken on the part of the promisor himself. But, to have this effect, the declaration of an intention not to perform the contract in the future must be unconditional in its terms. * * * The ground upon which it is held that when one declares that he will not perform a contract, the performance of which is to begin in the future, the other party may accept this declaration as a breach is that the contract is thus repudiated, and, so far as one party can do so, the contractual relation between the parties is destroyed. Clark on Contracts, 645; Zuck v. McClure, 98 Pa. 545.' Kilgore v. N. W. T. Baptist Educational Ass'n, 90 Tex. 142, 144, 37 S. W. 598, 600."

For reasons stated, I believe the trial court erred in directing verdict and rendering judgment for appellee; that this court erred in affirming the judgment, also erred in overruling appellant's first motion for rehearing. Therefore, I am of opinion that the order of this court, overruling appellant's motion for rehearing, should be set aside, that the same should be granted, the judgment of affirmance set aside, and that judgment should now be rendered reversing the judgment below and remanding the cause for further proceedings.